IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 16, 2005 Session

**FORD MOTOR CREDIT COMPANY v. RUTH E. JOHNSON,
COMMISSIONER OF REVENUE, STATE OF TENNESSEE**

Appeal from the Chancery Court for Davidson County
No. 01-980-II     Carol McCoy, Chancellor

No. M2004-00050-COA-R3-CV - Filed September 21, 2005

Ford vehicles leased by its dealers are simultaneously purchased by Ford Credit, a wholly owned
subsidiary of the Ford Motor Company. Ford Credit is subject to a franchise tax which is determined
by the book value of its tangible personal property owned or used in Tennessee. If the leased
vehicles are finished goods inventory, their value is excluded from the calculation of franchise taxes.
The trial court ruled that the leased vehicles were not held by Ford Credit for sale, and thus did not
qualify as finished goods inventory. Ford Credit appeals. The judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which W. FRANK CRAWFORD,
P.J.,W.S., and DAVID R. FARMER, J., joined.

Michael D. Sontag and Christopher L. Haley, Nashville, Tennessee, attorneys for appellant, Ford
Motor Credit Company.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Mary Ellen
Knack, Assistant Attorney, General for appellee, State of Tennessee.

**OPINION**

For the privilege of transacting business in Tennessee, Ford Motor Credit Company
[hereinafter "Ford Credit"] was subject to a franchise tax. Tenn. Code Ann. § 67-4-906. For the
1997 and 1998 tax years it duly filed tax returns using a method which determines the tax according
to the book value of Ford Credit's real and tangible personal property owned or used in Tennessee,
including the value of leased vehicles. In April 2000, Ford Credit filed amended returns for 1997
and 1998 claiming a partial refund of the taxes paid for each of these years, claiming that the amount
by which the book value of these leased vehicles exceeded, for 1997 and 1998, fifty million and forty
million dollars, respectively, was exempt from franchise and excise taxes under the "finished goods"

definition of Tenn. Code Ann. § 67-4-906(a)(9).[1]  The facts were not disputed, and each party filed a motion for summary judgment on the issue of whether the leased vehicles qualified as finished goods inventory pursuant to Tenn. Code Ann. § 67-4-906(a)(9).  The trial judge granted the motion of the Commissioner and dismissed the case, reserving the amount of attorney fees.  Tenn. Code Ann. § 67-1-1803(d).  Ford Credit appeals, and presents for review the issue of whether the leased vehicles are exempt finished goods inventory as that term is statutorily defined.  Appellate review is *de novo* with no presumption of correctness, ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 91 (Tenn. 1993).

The facts are stipulated as found by the trial court:

> Ford Credit is the largest provider of automotive financing in the world.  In 1959, Ford Motor Company [hereinafter "Ford"] created Ford Credit as a wholly-owned subsidiary to provide Ford with financing services for its business of producing and selling cars and trucks.  As a result, Ford Credit provides financing option to Ford customer, including retail lease plans.  If a customer chooses to lease a vehicle, the customer enters into a retail lease contract with the dealer and Ford Credit, simultaneously with the customer's lease execution, purchases the vehicle subject to the lease from the dealer.  Ford Credit takes ownership of the lease and the title to the vehicle from the dealer.  Generally, the dealer is under no further obligation and Ford Credit becomes responsible for the management and servicing of the lease.

> At the end of the lease term, Ford Credit continues to own the leased vehicle.  Ford Credit generally disposes of the leased vehicle in one of three ways.  First, the customer has the option to purchase the vehicle from Ford Credit at the end of the lease term for the residual value of the vehicle as set forth in the lease agreement.  Second, the customer may return the vehicle to the original dealer.  The dealer has an option to purchase the vehicle from Ford Credit at its residual value.  Third, if neither the customer nor the dealer desires to purchase the vehicle, Ford Credit sell the vehicle at a commercial auction.

> At all times, the leased vehicles owned by Ford Credit are fully functional vehicles that remain in the same state or form in which they were originally created; at no time does Ford Credit show its ownership of the leased cars as "net investment in operating leases." Ford Credit does not carry the vehicles at issue as "inventory" on its books and records.

---

[1] In effect during 1997 and 1998, and since superseded.

Ford Credit carries these leased vehicles on it books as depreciable assets. However, Ford Credit never holds or has physical possession of any vehicles that it leases.

> During 1997 and 1998, Ford Credit acquired retail lease contracts for Ford leased vehicles. The book value of those vehicles totaled $597,303,071 for the calendar year 1997 and $446,834,021 for the calendar year 1998. Using those book values, Ford Credit timely filed a Tennessee Franchise and Excise Tax Return for the 1997 and 1998 tax years. In April, 2000, Ford Credit filed an amended Tennessee Franchise and Excise Tax Return and sought a refund for a portion of the franchise and excise taxes that it paid in 1997 and 1998. Ford Credit claimed that $50,000,000 and $40,000,000 of the vehicle book values at issue for tax years 1997 and 1998, respectively, were in excess of the relevant statutory amounts and were exempt from franchise and excise taxes under the provision of Tenn. Code Ann. §67-4-2108(a)(6)(B) and (C). When the Department of Revenue did not act upon these refund claims within six months, the claims were deemed denied pursuant to Tenn. Code Ann. § 67-1-1802(c)(1). Ford Credit filed this lawsuit seeking a refund of the taxes.

Tennessee Code Annotated § 67-4-906(a)(8) authorized Ford to exclude exempt inventory in the computation of its minimum tax base. This statute defined "exempt inventory" as

> that portion of a corporation's finished good inventory in excess of fifty million dollars ($50,000,000) for corporate fiscal years beginning on or after July 15, 1996, forty million dollars ($40,000,000) for corporate fiscal years beginning on or after July 15, 1997, and thirty million dollars ($30,000,000) for corporate fiscal years beginning on or after July 15, 1998, that would otherwise be included in the minimum measure of the corporation's franchise tax base.

The statute further provided that "finished goods inventory" meant tangible personal property that was

(A)  Owned by the taxpayer;

(B)  Shown on the taxpayer's books and records kept in accordance with generally accepted accounting principles;

(C)  Held for wholesale or retail sale; and

(D)  In need of no further fabrication or processing by or for the owner; except, in the case of configuring, testing or packaging of computer products.

Tennessee Code Annotated § 67-4-906(a)(9) (1998). As we have noted the only issue for review in this case is whether vehicles that were owned by Ford Credit and leased to Ford customers constituted "finished goods inventory" under the statutory definition.

Ford Credit is a wholly-owned subsidiary of Ford Motor Company and, during the Tax Year at issue, it was engaged in the business of leasing automobiles to customers for specified lease terms. At the end of the lease terms, which typically ranged from two to four years in length, Ford Credit sold each of the leased vehicles in one of three ways: (1) to the lessee for the residual value of the vehicle as specified in the lease agreement; (2) to the original dealer for the residual value; or (3) at a commercial auction.

The trial court ruled that the leased vehicles did not meet two of the four requirements specified in Tenn. Code Ann. § 67-4-906(a)(9) because (1) the leased vehicles "were not held for wholesale or retail sale" by Ford Credit, and (2) they were not tangible personal property shown on Ford Credit's books and records kept in accordance with generally accepted accounting principles [G.A.P.].

We think a resolution of this case properly requires an inquiry into the meaning of the third prong of the definition of "finished good inventory": were the vehicles owned by Ford Credit and leased by it to whomever held by Ford Credit "for wholesale or retail sale"? The trial court ruled that Ford Credit made no showing that it holds the vehicles for sale within the plain meaning of the statute, because "inventory" implies that a taxpayer's products, goods or tangible personal property is physically kept or stored for later sale, and that neither the leases purchased by Ford Credit nor the leased vehicles acquired by it comport with the statutory requirement that tangible personal property be held for sale. Ford Credit argues that a lease is a sale, citing *Dixie Rents Inc. v. City of Memphis*, 594 S.W.2d 397 (Tenn. Ct. App. 1979) and that the various taxing schemes recognize this principle. Tenn. Code Ann. § 67-4-702(a)(15); Tenn. Code Ann. § 67-6-102(a)(27)(A). It further argues that the leased vehicles constitute inventories of tangible personal property held for sale. The precise issue – which cannot arise again owing to the superseding statute – is one of first impression.

The trial judge recognized the several decisions of the appellate courts that a lease was a "sale of the right to use a thing for an agreed upon period," and that rental property held for such a "sale" qualified as inventory, but ruled that no provision in the Franchise Tax Act, as contrasted to the business and sales tax statutes, supports Ford Credit's arguments because "inventory" implies that tangible personal property is kept or stored for later sale. The trial judge reasoned that the leased vehicles purchased by Ford Credit did not comport with the statutory requirement that the tangible personal property be held for sale. We agree.

Tennessee Code Annotated § 67-4-906(a) authorized Ford Credit to exclude exempt inventory in the computation of its minimum tax base. The leased vehicles were simply not held for "wholesale or retail sale"; they were not shown on Ford Credit's books as inventory, but rather as "net investment in operating leases" and as depreciable assets. We agree with the Commissioner that having shown the leased vehicles as net investment in operating leases, and thus depreciable assets,

-4-

Ford Credit cannot later claim that these leased vehicles were finished goods inventory under the Franchise Tax Law.

The judgment is accordingly affirmed at the costs of the appellant.

_____
WILLIAM H. INMAN, SENIOR JUDGE